

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00184-CR

_____

DIEGO ROBERTO CAMACHO, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR22-00105

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Diego Roberto Camacho appeals his twenty-year sentence for aggravated assault with a deadly weapon. In one point, he contends that the sentence is grossly disproportionate to the crime. We affirm the trial court's judgment.

## II. BACKGROUND

Camacho pleaded guilty to aggravated assault with a deadly weapon (a firearm) and was placed on deferred-adjudication community supervision in September 2022. *See* Tex. Penal Code Ann. § 22.02(a)(2), (b). The State moved to proceed to adjudication in April 2023, alleging that Camacho had violated nine conditions of his community supervision. The State amended its motion a month later to add a tenth alleged violation. Camacho pleaded true to the original nine violations and not true to the newly alleged tenth violation. After an evidentiary hearing, the trial court found that Camacho had violated ten conditions of his community supervision, adjudicated him guilty of aggravated assault with a deadly weapon, and revoked his community supervision. The trial court then sentenced him to twenty years in prison, which is the maximum term. *See id.* §§ 12.33, 22.02(a)(2), (b). This appeal followed.

## III. DISCUSSION

In his sole point, Camacho contends that his twenty-year sentence violates the Eighth Amendment prohibition on cruel and unusual punishment. *See* U.S. Const. amend. VIII; Tex. Const. art. 1, § 13. Although Camacho concedes that the sentence

2

is within the statutory range, he nonetheless argues that "[t]he maximum range of punishment amounts to cruel and unusual punishment" and that "all prison time is cruel and unusual punishment as the number of Covid cases in the prisons is still out of control."[1] The State argues that he forfeited this argument by failing to raise it in the trial court. We agree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Generally, a defendant forfeits constitutional errors by failing to object at trial. *Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 279–80 (Tex. Crim. App. 2009). Both this court and the court of criminal appeals have repeatedly held that a defendant forfeits federal and state constitutional complaints

---

[1]Camacho cites no evidence for this allegation, and we note that the Texas Department of Criminal Justice states that it stopped reporting COVID-19 statistics when the federal public health emergency ended on May 11, 2023. Tex. Dep't of Crim. Just., COVID-19 Medical Action Center, https://www.tdcj.texas.gov/covid-19/mac_dashboard.html (last visited Dec. 27, 2023).

3

about an allegedly cruel and unusual sentence by not raising the complaints in the trial court. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Curry v. State*, 910 S.W.2d 490, 497–98 (Tex. Crim. App. 1995); *Hicks v. State*, 415 S.W.3d 587, 588 (Tex. App.—Fort Worth 2013, no pet.); *Pollock v. State*, 405 S.W.3d 396, 405–06 (Tex. App.—Fort Worth 2013, no pet.); *Russell v. State*, 341 S.W.3d 526, 527–28 (Tex. App.—Fort Worth 2011, no pet.); *see also* Tex. R. App. P. 33.1(a); *White v. State*, No. 02-15-00231-CR, 2016 WL 437934, at *2 (Tex. App.—Fort Worth Feb. 4, 2016, no pet.) (mem. op., not designated for publication) (collecting more cases).

The record reflects that the trial court gave Camacho the mandatory opportunity for allocution, *see* Tex. Code Crim. Proc. Ann. art. 42.07, and the opportunity to argue the appropriate sentence. Yet he did not raise his Eighth Amendment complaint. He also did not file a motion for new trial. Accordingly, we hold that Camacho failed to preserve this point for appeal. *See* Tex. R. App. P. 33.1(a)(1); *Clark*, 365 S.W.3d at 339.

Even if Camacho had preserved his point, it lacks merit. "Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Indeed, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)), and any sentence within

the statutory limits is virtually "unassailable" on appeal if it is based upon the sentencer's informed normative judgment. *Id.* at 324. But a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Although the "precise contours [of the gross-disproportionality exception] are unclear," *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment), one thing is certain: it applies "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23; *Chavez*, 213 S.W.3d at 323–24.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we engage in a three-step review beginning with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *see also Chavez*, 213 S.W.3d at 323–24. Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706

(1982) (per curiam) (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder v. Puckett*, 954 F.2d 313, 317 (5th Cir. 1992) (holding that sentence was not grossly-disproportionate in light of both the Supreme Court's and the Fifth Circuit's precedent). In the rare case in which this threshold analysis "leads to an inference of gross disproportionality," we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm*, 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983) (applying steps two and three).

Camacho's disproportionality argument does not pass the threshold test. A grand jury indicted Camacho for aggravated assault by intentionally and knowingly threatening another person with imminent bodily injury by stating a threat and using or exhibiting a firearm. Aggravated assault is a second-degree felony punishable by imprisonment for two to twenty years and a fine up to $10,000. Tex. Penal Code Ann. §§ 12.33, 22.02(a)(2), (b). Camacho pleaded guilty to the charge. Camacho's violent and dangerous offense caused or threatened significant harm to both the victim and to society, and his guilty plea established his culpability. *See Simpson*, 488 S.W.3d at 323.

Although the record contains no evidence of Camacho's adjudicated or unadjudicated crimes before he was placed on community supervision, it does reflect that he committed at least two crimes while on community supervision. Specifically, the State alleged that Camacho made a silent or abusive call to a 911 service on

6

March 25, 2023, and committed criminal mischief by destroying a telephone while being booked into jail on May 14, 2023. *See* Tex. Penal Code Ann. §§ 28.03(a)(1), (b)(2) ("Criminal Mischief"), 42.061 ("Silent or Abusive Calls to 9-1-1 Service").

At the revocation hearing, a State's witness testified about Camacho's abusive and harassing call to 911 services. Audio of the 911 call that was played for the court reflects an angry, vulgar, racist tirade in which Camacho denigrated a specific racial group. The call ends with Camacho telling the 911 operator, "Don't be calling my number, bitch." Camacho was arrested for the call. Jail personnel testified that while being booked into jail, Camacho broke a jail telephone when he became angry that his wife would not answer his call. According to the witness, Camacho punched and kicked the telephone until it was broken.

Taking the *Simpson* factors together, we cannot say that Camacho's twenty-year sentence gives rise to an inference of gross disproportionality.[2] *See Simpson*, 488 S.W.3d

---

[2]Because Camacho's disproportionality argument does not pass the threshold test, we need not compare his sentences to others for the same offenses in Texas and elsewhere. *See Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.); *see also Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *5 (Tex. App.—Austin Oct. 28, 2021, no pet.) (mem. op., not designated for publication). Regardless, we note that although Camacho exhorts us to "not only consider the severity of the punishment related to similar jurisdictions and crimes but also consider the conditions of the times," he offers no comparators to justify his contention that his sentence is disproportionate to his crime. *See* Tex. R. App. P. 38.1(i). Citing *Solem*, Camacho nonetheless argues that disproportionality is relative to the crime's magnitude, noting that "an armed robbery is more serious than a robbery." We likewise note that aggravated assault with a deadly weapon (a firearm) is more serious than assault.

at 323; *see also Smith v. State*, No. 12-21-00220-CR, 2022 WL 2062474, at \*1–2 (Tex. App.—Tyler June 8, 2022, no pet.) (mem. op., not designated for publication) (holding that twenty-year sentence for aggravated assault with a deadly weapon was not cruel or unusual); *Thomas v. State*, No. 03-19-00471-CR, 2021 WL 2834716, at \*3 (Tex. App.—Austin July 8, 2021, pet. ref'd) (mem. op., not designated for publication) (holding that maximum sentence for aggravated assault with a deadly weapon with habitual-offender enhancement was not cruel or unusual).

Additionally, the trial court gave Camacho ample opportunity to argue for a low sentence. Camacho essentially sought only another chance at community supervision. But Camacho had pleaded true to nine violations of his community-supervision conditions. And testimony at the revocation hearing established that Camacho failed to attend anger management classes and a victim impact panel, failed to submit to all required drug and alcohol assessments, and failed to pay certain fines and fees. Citing this evidence of Camacho's open rejection of services available during his community supervision and continued tendency toward "anger and . . . violence," the trial court sentenced him to the maximum term in prison. *See* Tex. Penal Code Ann. § 12.33. But the trial court did consider Camacho's ability to pay the fine and imposed only a $500 fine.

---

*Compare* Tex. Penal Code Ann. § 22.01 ("Assault") *with* Tex. Penal Code Ann. § 22.02 ("Aggravated Assault").

Although Camacho received the maximum sentence, the trial court did not exceed the allowable range. *See id.* And the trial court did not impose the maximum fine. *See id.* Nothing in the record shows that Camacho's twenty-year sentence constitutes a grossly disproportionate sentence or cruel and unusual punishment under the Eighth Amendment.

## IV. CONCLUSION

Having overruled Camacho's sole point on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 11, 2024

9